IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT VOORHEES** <br> Plaintiff, <br><br> v. <br><br> **EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,** <br> Defendant. | **CIVIL ACTION** <br><br><br><br> **NO. 19-1761** |

DuBois, J.                                                                                                            March 6, 2020

# **M E M O R A N D U M**

## I. INTRODUCTION

This is an employment discrimination case in which plaintiff brings claims of age and disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act 43 P.S. § 951 *et seq.* ("PHRA"). Presently before the Court is defendant Educational Commission for Foreign Medical Graduates' ("ECFMG") Motion to Dismiss Plaintiff's Complaint (Document No. 6, filed June 5, 2019). The Motion is based on defendant's argument that plaintiff should be judicially estopped from pursuing his claims because he failed to disclose them in a bankruptcy proceeding. Def.'s Mot. Dismiss 1. For the reasons set forth below, the Court denies defendant's Motion.

## II. BACKGROUND

### A. Employment with Defendant

Plaintiff, Robert Voorhees, was employed by defendant as Manager of Compensation and Benefits from on or about June 6, 2016 until January 5, 2017. Compl. ¶¶ 10-11. In September of 2016, plaintiff alleges that he was ridiculed and criticized by defendant's Vice President of

Human Resources after disclosing to her that he was sixty-two years old. *Id.* ¶¶ 13-16. As a result of this treatment, plaintiff complained to the Director of Employee Relations. *Id.* ¶ 17.

Following the disclosure of his age and deterioration of his relationship with the Vice President of Human Resources, plaintiff began to experience symptoms associated with his clinical depression and anxiety disorder. *Id.* ¶ 18. As a result, on December 16, 2016, plaintiff took a medical leave of absence, returning to work on December 27, 2016. *Id.* ¶ 20. However, upon his return, plaintiff was told that his physician's letter releasing him to return to work was "not properly completed" and directed to leave the workplace. *Id.* ¶ 20. Plaintiff alleges that he then suffered exacerbated symptoms associated with his disabilities and requested an extension of his medical leave to February 20, 2017. *Id.* ¶ 21. Plaintiff's request for an extension of his medical leave was denied and his employment was terminated, effective January 5, 2017. *Id.* ¶ 22.

**B. Bankruptcy**

During his employment with defendant, plaintiff filed a bankruptcy petition under Chapter 13 of the United States Code in the United States Bankruptcy Court for the District of New Jersey on November 17, 2016. Joint Ex. B. On Schedule A/B, attached to his petition, in which he listed his personal property, plaintiff stated he had no "[c]laims against third parties." *Id.* at 13.

On January 10, 2017, Plaintiff filed a motion to convert his bankruptcy to a Chapter 7 proceeding, Joint Ex. C, which was granted by the Bankruptcy Court on January 11, 2017, Joint Ex. D. In granting the motion, the Bankruptcy Court ordered plaintiff to file amendments to previously filed schedules and a "schedule of all property which was acquired after the commencement of the case, but before the entry of this order." Joint Ex. E 2. Plaintiff

subsequently amended his petition on January 26, 2017, to reflect that he was no longer receiving any income. Joint Ex. H.

On April 13, 2017, the Bankruptcy Court entered an Order of Discharge, discharging plaintiff's debts under 11 U.S.C. § 727. Joint Ex. I. That court subsequently entered a Final Decree on February 27, 2018, concluding that plaintiff's estate had been fully administered. Joint Ex. N.

### C. Discrimination Claims

Following his termination by defendant, plaintiff retained the Spielberger Law Group to represent him in his employment discrimination claims against defendant. Joint Ex. M. On January 31, 2017, plaintiff's counsel sent defendant a demand letter, which alleged "disparate and discriminatory treatment on the basis of [plaintiff's] disability." *Id.* at 1. The letter sought "(1) a fair and reasonable settlement for back wages, future wages, non-pecuniary damages, benefits, and attorneys' costs and fees; and (2) a positive letter of reference." *Id.* at 2. On March 21, 2017, plaintiff dual-filed an administrative charge of discrimination asserting age and disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") against defendant. Joint Ex. J. Plaintiff filed his Complaint in this Court on April 23, 2019, alleging that he was discriminated and retaliated against as a result of his age and his disabilities in violation of the ADA, ADEA, and PHRA. Compl. ¶¶ 1-2. On June 5, 2019, defendant ECFMG filed a Motion to Dismiss Plaintiff's Complaint (Doc. No. 6), and plaintiff responded on July 3, 2019 (Doc. No. 9). Defendant filed a reply on July 16, 2019 (Doc. No. 12). The Court conducted an evidentiary hearing on defendant's Motion on March 3, 2020. The Motion is thus ripe for review.

### III. LEGAL STANDARD

#### A. 12(b)(6) Motion to Dismiss

"The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Twombly*, 550 U.S. at 557, 564. Such conclusory allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

#### B. Judicial Estoppel

Judicial estoppel is a "judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). The doctrine recognizes the "intrinsic ability of courts to dismiss an offending litigant's

complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts." *Krystal Cadillac– Oldsmobile GMC Truck, Inc. v. General Motors*, 337 F.3d 314, 319 (3d Cir. 2003).

The Third Circuit has cautioned that judicial estoppel is an "extraordinary remedy" to be invoked in order to stop a "miscarriage of justice." *Ryan Operations*, 81 F.3d at 356 (internal quotations omitted). It is not a "technical defense for litigants seeking to derail potentially meritorious claims." *Id.* Therefore, in determining whether the doctrine should apply, courts consider three prongs: whether "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, *i.e.*, in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018).

While the Third Circuit has held that "a district court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes," the Court must "ensure that the party to be estopped has been given a meaningful opportunity to provide an explanation for its changed position." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 n.5 (3d Cir. 2001) (internal quotation omitted). Accordingly, the Court held an evidentiary hearing in this case, so as to give plaintiff an opportunity to explain the failure to list his employment discrimination claim as an asset in the bankruptcy proceeding.

## IV.     DISCUSSION

In its Motion to Dismiss, defendant contends that plaintiff should be judicially estopped from pursuing his claims because he failed to disclose them during his bankruptcy proceeding.

5

The Court disagrees and concludes that plaintiff's nondisclosure was the result of a good faith mistake such that judicial estoppel is not warranted.

### A. Prong One: Irreconcilably Inconsistent Positions

Judicial estoppel may be imposed only if the party to be estopped has asserted a position that is "irreconcilably inconsistent with one he or she asserted in a prior proceeding." *Danise*, 738 F. App'x at 50. In this case, it is clear that plaintiff has taken inconsistent positions in the Bankruptcy Court and this Court. During his bankruptcy proceeding, plaintiff failed to disclose his claims against ECFMG, despite sending a demand letter and filing a charge of discrimination before the Bankruptcy Court entered its Order of Discharge. Before this Court, plaintiff asserts several claims against ECFMG. Plaintiff's failure to disclose his claims to the Bankruptcy Court was in violation of his "continuous" duty to disclose "throughout the course of a bankruptcy proceeding." *Danise*, 738 F. App'x at 50.

### B. Prong Two: Bad Faith

Under the second prong, courts must consider whether the party changed his or her position in bad faith—*i.e.*, "with intent to play fast and loose with the court." *Krystal Cadillac*, 337 F.3d at 319 (internal quotations omitted). The Third Circuit applies a "rebuttable inference of bad faith…when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Id.* at 321. The Third Circuit has cautioned, however, that "an inference of bad faith does not always arise from 'the mere fact of non-disclosure.'" *Bartel v. A-C Prod. Liab. Tr.*, No. 11-45628, 2016 WL 8730162, at *6 (E.D. Pa. Dec. 16, 2016) (citing *Ryan Operations*, 81 F.3d at 364). Accordingly, a plaintiff may effectively rebut the presumption of bad faith if he can show that his nondisclosure was merely "careless or inadvertent" or the result of "a good faith mistake rather

6

than as part of a scheme to mislead the court." *Ryan Operations*, 81 F.3d at 362, 364.

In this case, plaintiff testified that he did not intentionally withhold any information from the Bankruptcy Court regarding his claims against defendant. March 3, 2020 Hr'g Tr. 27:5-8. Plaintiff explained that his bankruptcy counsel never informed him of his continuing obligation to amend his submissions to the Bankruptcy Court. *Id.* at 15:22-16:24. He further stated that, if he had been aware of this obligation, he would have informed the Bankruptcy Court of his claims against defendant. *Id.* at 24:14-16.

The Court agrees with defendant that bad faith can be inferred in this case based on plaintiff's knowledge of his claims against defendant during the pendency of his bankruptcy and his motive to conceal those claims. *See Danise*, 738 F. App'x at 51 (finding a "motive to conceal" where the undisclosed claim "may have affected the size of the bankruptcy estate"). However, the Court concludes that plaintiff has rebutted that inference by showing that his nondisclosure was the result of a good faith mistake rather than "a scheme to mislead the court." *Ryan Operations*, 81 F.3d at 362 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980)).

While this Court has previously rejected ignorance of one's duty to disclose as an excuse, *see Hardee-Guerra v. Shire Pharm.*, 737 F. Supp. 2d 318 (E.D. Pa. 2010) (DuBois, J.), the inference of bad faith in that case was bolstered by the fact that the plaintiff had cross-filed a charge of discrimination with the EEOC and PHRC years before filing her petition in bankruptcy and nonetheless failed to list her discrimination claims as assets, *id.* at 329. The Court thus emphasized that there was "sufficient evidence to trigger the presumption...[of] bad faith." In contrast, Voorhees' claims arose during his bankruptcy proceeding. Moreover, he was not informed of his continuous obligation to amend his filings. March 3, 2020 Hr'g Tr. 15:22-16:24.

As such, applying the "fact-specific" inquiry that is required, the Court concludes that plaintiff did not act with the intent to play fast and loose with the court. *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010) ("Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion."). Plaintiff has demonstrated that his nondisclosure was "inadvertent" rather than the result of "deliberate manipulation." *Ryan Operations*, 81 F.3d at 364. Accordingly, the Court concludes that plaintiff has effectively rebutted the inference of bad faith and that judicial estoppel is not warranted. Because the Court concludes that plaintiff has rebutted the inference of bad faith, it need not proceed to prong three of the judicial estoppel analysis.

## V. CONCLUSION

For the foregoing reasons, the Court denies defendant's Motion to Dismiss Plaintiff's Complaint. An appropriate Order follows.